**IN THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

| | |
|---|---|
| WENDY MIKELL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:24-cv-39 |
| | ) |
| LOUIS DEJOY, POSTMASTER | ) |
| GENERAL, U.S. POSTAL SERVICE, | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

COMES NOW, Wendy Mikell, Plaintiff in the above-styled action, and hereby files this her Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) and this Court's Order granting leave. [Doc. 32] (See Fed R. Civ. P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.")  Plaintiff shows this honorable Court the following:

**I.  Parties, Jurisdiction, and Venue**

1.    Plaintiff Wendy Mikell brings this instant action for violations of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (hereinafter

"Title VII"), which allows for suit against Defendant.

2.    Plaintiff Wendy Mikell is a resident and citizen of Bacon County, Georgia, United States of America.  Plaintiff is an employee of ths United States Postal Service as defined by Title VII.

3.    Defendant Louis Dejoy, Postmaster General, U.S. Postal Service (USPS) is the proper entity to bring this action against and may be sued in the appropriate district court of this state.  It is the responsibility and duty of the USPS to evaluate and act upon employment decisions.  The USPS is an employer as defined by Title VII.

4.    All events giving rise to this action took place in Bacon County, Georgia, United States of America.

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under Title VII of the Civil Rights Act of 1964.

6.    Venue is proper in this district under 42 U.S.C. § 20003-5(f)(3) in that the Plaintiff would have worked in this judicial district but for the unlawful employment practice of Defendant.

## II. Conditions Precedent

7.    Plaintiff has exhausted her administrative remedies by timely filing EEOC

charges, pursuant to 42 U.S.C. § 2000e-5(e)(1), of discrimination on February 1, 2024 (attached hereto as Exhibit "A").

8.   Plaintiff raised in her EEOC charge the same allegations of race-based discrimination as set forth in this Amended Complaint, further demonstrating administrative exhaustion.

9.   On or around March 7, 2024, Plaintiff received the EEOC issued Notice of Right to Sue for the charges alleged, and the Original Complaint was filed within 90 days of receipt of that notice (attached hereto as Exhibit "B").

### III.  Allegations

10.   Prior to April 14, 2022, Plaintiff served, uninterrupted, as the Postmaster of the United States Postal Service Alma, Georgia office.

11.   On April 14, 2022, Marlon Burton, a city carrier and employee of USPS, verbally threatened Plaintiff and promised to harm her.

12.   Plaintiff contacted her supervisor, Nicholas James, immediately thereafter, but Mr. James failed to respond to the situation until a postal inspector became involved.

13.   On April 15, 2022, Mr. James sent Plaintiff a text message to place Marlon Burton on Emergency Placement. Plaintiff was instructed by the Postal Inspection Service to have local law enforcement on the scene for her

protection during the removal process. Plaintiff did as instructed and was forced to request local law enforcement to assist in removing Burton from the premises as a result of him becoming visibly angry and refusing to leave the premises under her directive.

14. Once Burton was removed, Mr. James contacted USPS Human Resources and claimed that Plaintiff placed Burton on Emergency Placement herself and called local authorities to have him escorted from the premises.

15. On April 19, 2022, Plaintiff was asked to appear before a "Threat Assessment Committee" to present the events that occurred on April 14, 2022.  The committee found that Burton ranked as the highest possible threat, and specifically, the threat directed toward Plaintiff was labeled the highest possible threat.

16. The committee, including members of human resources, directed Plaintiff to proceed with the removal of Burton from the USPS.

17. While the committee was meeting, human resources determined that Mr. James failed to follow proper procedures in ordering an Initial Management Inquiry Process ("IMIP") against Plaintiff due to the removal of Marlon Burton.  Plaintiff raised her concerns about this IMIP to the committee and human resources, and the groups directed Mr. James to suspend the IMIP

-4-

for his failure to follow proper procedures.

18. Mr. James did not suspend the IMIP and instead gathered false statements from other employees and threatened that an EEO action would be forthcoming if she could not resolve her disputes with Marlon Burton.

19. Following this, Mr. James launched an internal investigation into Plaintiff's management of the Alma Post Office, which yielded no adverse findings.

20. Mr. James then directed Plaintiff to contact Marlon burton and tell him he could return to work. Plaintiff stated that a ruling had been made and Burton was terminated. Mr. James stated "I have not contacted you to debate this. Failure to follow my direct order can lead to your removal from the Postal Service."

21. Plaintiff did as she was instructed and contacted Burton, who replied that he would return at his convenience and it was time she learned she could not tell him what to do.

22. Burton returned to work on May 26, 2022. The next day, after being informed that he would have to work the following day as well, Mr. Burton charged across the work floor, approached Plaintiff's desk and stretched his hand out into her face, and stated he knew how to handle things and he would once and for all.

23. Burton then cocked his hand back into a fist and hurled it toward Plaintiff's face, pulling up slightly short of contact and pointed at her.

24. Plaintiff again reported this incident to her supervisor, Mr. James. Within the next several weeks, Mr. James responded to this report by asking Sonya Miley, Manager of Post Office Operations ("MPOO"), to place Plaintiff on emergency placement. This adverse employment action was effectively a suspension and threat to Ms. Mikell's benefits.

25. When Plaintiff asked Ms. Miley the reason for being placed on emergency placement, Miley informed Plaintiff she was following Mr. James' directive. When pressed further for a reason, Ms. Miley reached out to Mr. James, who responded the emergency placement was a result of "creating a hostile work environment."

26. Plaintiff received a letter informing her that she was being placed on emergency placement, but the reason contained in the letter was different: "altercation with city carrier."

27. Plaintiff has not been able to return to work at the Alma Post Office as a result of this incident and the hostile work environment created by Defendant. Marlon Burton, however, has been able to continue working without repercussion. Upon information and belief, this disparate treatment

is a result of Plaintiff being a white woman and Marlon Burton being an African American man.

28. Later, on September 25, 2023, Plaintiff was confronted by Burton at a local ATM - confirming that he remains employed and aggressive towards Plaintiff.

29. Importantly, several keys facts in this case have already been adjudicated between Marlon Burton and Plaintiff in a civil suit brought in the State Court of Appling County, Civil Action No. 2024000022, including:

   a. Marlon Burton repeatedly threatened Wendy Mikell in which the majority of events occurred in the work place;

   b. Marlon Burton's actions as to Wendy Mikell were found by a Threat Assessment Committee of the United States Post Office to be at the highest threat level;

   c. Marlon Burton was reinstated on May 26, 2022, and once reinstated, he exhibited heightened aggression towards Wendy Mikell;

   d. On May 27, 2022, Marlon Burton approached Wendy Mikell's work station, placed his hand near her face, drew back his fist and took a position preparing to strike her;

   e. The sum of these actions forced Wendy Mikell to take a leave of

absence due to her being in constant fear for her safety because Marlon Burton's menacing presence and behavior; and

f.      This conduct has caused severe emotional distress, physical pain and suffering, and other damages.

(See Bacon County Trial Court Order, attached hereto as Exhibit "B").

30.     Then, on January 25, 2024, Plaintiff received a letter directing her to return to work as the Postmaster of the Alma Post Office.  This was just days before her interview with USPS ADR specialist, Jerry Murphy.  Plaintiff had already initiated her EEO proceedings (see Exhibit "A") and stated she had been discriminated against and would not be safe so long as Burton remained employed and unaccountable for his actions.  This attempt to force Plaintiff to return to work and be harassed appears to be no more than the construction of a defense for this action, the previous EEO proceedings, and a continuation of the pattern of discrimination, or in the alternative retaliation for filing with the EEO, to further deprive Plaintiff of her terms, conditions, earned benefits of employment.

31.     Most recently, on October 16, 2024, Plaintiff received yet another threatening letter from the USPS.  (See October 2024 Letter, attached hereto as Exhibit "D").  This letter Plaintiff by proposing her permanent removal

from the post office because she refused to accept further harassment by returning to work with James and Burton.

32. This continued harassment and pattern of adverse employment actions by Burton, James, and Defendant is a result of her race. Burton and James have openly claimed Plaintiff does not "fit in" with them and they prefer to "stick to their own kind."

33. While Plaintiff remains unable to work due to her race being white and "not fitting in" with her superiors and the initial aggressor, Burton, who is African American like the supervisors. Burton has been able to return to work, earn wages, and work to secure his benefits.

34. Defendant has allowed and actively participated in this pattern of behavior and discrimination that culminated in the adverse employment action of placing Plaintiff on emergency placement and keeping her out of work due to the hostile work environment resulting from her inability to "fit in" or "be of the kind" of her African American co-employees and supervisor.

35. Plaintiff has lost her position in Alma Post Office by way of being unable to work in the hostile work environment and the protection of her benefits, including her retirement.

## IV. Causes of Action:

### *Count I: Unlawful Discrimination in Employment - Hostile Work Environment*

36.    Plaintiff incorporates each and every preceding paragraph as if fully stated herein.

37.    Plaintiff, a white woman, was fully qualified for her position as Postmaster of Alma, Georgia Post Office.

38.    Despite her qualifications, she was wrongfully placed on emergency placement for not being the same race, which is protected, as her supervisor, Mr. James.

39.    Her several instances of being placed on emergency placement and creating a hostile work environment such that she could not return are adverse employment actions.

40.    Title VII protects members of both majority and minority groups from race-based discrimination.  Plaintiff, although traditionally part of a majority group, is part of a protected class in this instance, where she was a different race from her superiors and complaining co-worker, and she faced disparate treatment as a result.

41.    These adverse employment actions were primarily, if not fully, motivated by Plaintiff's race and a result of Defendant discriminating against Ms. Mikell

on the basis of her race.

42. Defendant unlawfully discriminated against Plaintiff with respect to the terms, conditions, privileges, and compensation of her employment on account of her race.  Plaintiff was the victim of harassment at the hand of two African American USPS employees, one co-worker (Burton) and one supervisor (James).

43. Plaintiff was placed on emergency placement because Marlon Burton took exception to Plaintiff transmitting orders from her supervisors because she was a white woman.  Once Mr. Burton escalated the situation - leading to an assault of Plaintiff - Plaintiff was the one punished for "not fitting in" with her African American co-workers and supervisors.  The actual aggressor, Burton, faced no such repercussions for his actions as he was not a member of Plaintiff's protected race class.

44. Prior to this discrimination, Plaintiff had no prior employment complaints or reports.  She was and is well qualified for the position held.

45. Defendant violated Plaintiff's rights by forcing her out of work, continually harassing her, and failing to address the hostile work environment on account of her race and not "fitting in."

46. Plaintiff was also retaliated against following her complaint of Burton's

initial verbal threat directed at her and having to report the incident to a post inspector because Mr. James failed in addressing the situation.

47. Her report of all encounters with Marlon Burton, including those made to the Threat Assessment Committee were truthful and an exercise of protected reporting of hostile workplace interactions. Because of these reports, made against an African American man while she was a white woman, Plaintiff was wrongfully placed on emergency placement without an end date for such placement.

48. As a result of the conduct described in the preceding paragraphs, Defendants have intentionally discriminated against Ms. Mikell in taking such adverse employment actions, i.e. placing her on emergency placement numerous times and precluding her from working in a safe work environment.

49. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been damaged and is entitled to the relief set forth herein.

### *Count II: Claim for Attorney Fees Pursuant to 42 U.S.C. § 2000e5(k)*

50. Plaintiff incorporates each and every preceding paragraph as if fully stated herein.

51. Plaintiff is also entitled to a reasonable allowance for attorneys fees as part

of her costs pursuant to 42 U.S.C. § 2000e5(k).

### V.  Prayer for Relief

WHEREFORE, Plaintiff respectfully prays that:

a.     Summons and process be issued and served upon Defendant;

b.     For a trial by jury comprised of twelve persons;

c.     Plaintiff be awarded an appropriate sum to compensate her for her

       injuries, damages, and attorney's fees;

d.     Plaintiff be granted her entire retirement benefits;

e.     Enter an award of back pay through the date of judgment as well as

       front pay in lieu of reinstatement; and

f.     Such other and further relief that this Court deems appropriate.


This 6th day of March, 2025.


                                        */s/ Brent J. Savage*
                                        Brent J. Savage
                                        Georgia Bar No. 627450
                                        Matthew R. Bradley
                                        Georgia Bar No. 835095

**SAVAGE, TURNER, PINCKNEY,**
**SAVAGE & SPROUSE**
Post Office Box 10600
Savannah, Georgia 31412

(912) 231-1140
lwickline@savagelawfirm.net

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the foregoing on counsel for the parties via the Court's CM/ECF filing system, which will send an email link to such filing as follows:

O. Woelke Leithart
Assistant United States Attorney
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
Woelke.Leithart@usdoj.gov

*/s/ **Brent J. Savage***
Brent J. Savage
Georgia Bar No. 627450

This 6th day of March, 2025.

**Savage, Turner, Pinckney**
**Savage & Sprouse**
P.O. Box 10600
Savannah, GA 31412
(912) 231-1140 (T)
(912) 232-4212 (F)
bsavage@savagelawfirm.net
lhatcher@savagelawfirm.net