# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

```
WENDY MIKELL,

    Plaintiff,
                                        5:24-CV-39
    v.

DOUG TULINO, POSTMASTER¹
GENERAL U.S. POSTAL SERVICE;

    Defendant.
```

**ORDER**

Before the Court is Defendant Doug Tulino's motion to dismiss. Dkt. No. 34. The motion has been fully briefed and is ripe for review. Dkt. Nos. 34, 35, 37, 39. For the reasons set forth below, the Court **GRANTS** Defendant's motion to dismiss.

**BACKGROUND**

**I. Factual Background**

This case arises out of a series of interactions between Plaintiff Wendy Mikell and various employees of the U.S. Postal Service ("USPS"), led by Defendant Tulino. ² Dkt. No. 33 ¶¶ 10-35, Dkt. No. 37 n.1. Mikell, a white woman, alleges that between April

---

[1] The Clerk is **DIRECTED** to correct the docket to reflect the current postmaster general is Doug Tulino, not Louis DeJoy. See supra n.3.
[2] At this stage, the Court must "accept as true all facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).

2022 and October 2024, she experienced "harassment and a pattern of adverse employment actions" from Defendant's employees and subsequently lost her position as postmaster of the Alma Post Office due to her race. Dkt. No. 33 ¶¶ 32–35.

Plaintiff was the postmaster of the USPS's Alma, Georgia, office during the events giving rise to this suit. Id. ¶¶ 10, 35. Plaintiff alleges that on April 14, 2022, Marlon Burton, an employee of USPS, threatened her. Id. ¶ 11. Though Plaintiff contacted her supervisor, Nicholas James, after the incident, James failed to immediately respond to the threat. Id. ¶¶ 12–13. The next day, however, James instructed Plaintiff to place Burton on emergency placement. Id. ¶¶ 12–13. That same day, Plaintiff requested law enforcement's assistance to remove Burton from the premises due to his conduct. Id. ¶ 13. James later claimed that Plaintiff placed Burton on emergency leave herself and called law enforcement to have him escorted from the premises. Id. ¶ 14. On April 19, 2022, a "Threat Assessment Committee" found that Burton ranked as the highest possible threat and directed Plaintiff to proceed with removal of Burton from the USPS. Id. ¶¶ 15–16.

James ordered an Initial Management Inquiry Process ("IMIP") against Plaintiff in response to these events. Id. ¶ 17. Though the Threat Assessment Committee and USPS Human Resources directed James to suspend the IMIP, he did not. Id. ¶¶ 17–19. Instead, James threatened Plaintiff with an "EEO action" should she not resolve

her disputes with Burton. Id. ¶¶ 17-19. James then initiated an internal investigation into Plaintiff's management of the Alma Post Office. Id.

Subsequently, James directed Plaintiff to tell Burton to return to work. Id. ¶ 20. James told Plaintiff that failure to follow his order could lead to her removal from the postal service. Id. When Plaintiff contacted Burton, he replied that she could not tell him what to do. Id. ¶ 21.

On May 27, 2022, the day after Burton returned work, Burton stretched his hand into Plaintiff's face and stated that he knew how to handle things and "would [handle things], once and for all." Id. ¶¶ 22-23. Burton then balled his hand into a fist, made a motion as if to contact Plaintiff, and pointed at her. Id. Plaintiff reported this incident to James. Id. ¶ 24.

Several weeks after the May 27 incident, Plaintiff was placed on emergency placement. Id. ¶¶ 24-26. According to the second amended complaint, she received divergent reasons for the placement. Id. A Post Office Manager of Operations reported, after conferring with James, that the placement was due to Plaintiff's creation of a "hostile work environment." Id. ¶¶ 25-26. The formal letter informing Plaintiff of the placement reported, however, that the action was the result of an "altercation with a city carrier." Id. ¶¶ 25-26. Plaintiff has not returned to work at the Alma Post Office due to this incident. Id. ¶ 27.

3

Over a year later, on September 23, 2023, Burton confronted Plaintiff at an ATM and was allegedly aggressive toward her. Id. ¶ 28. Then, on January 25, 2024, Plaintiff received a letter directing her to return to work as the postmaster of the Alma Post Office. Id. ¶ 30. Later that year, on October 16, 2024, USPS sent another letter to Plaintiff proposing her permanent removal from the Post Office because she would not return to work. Id. ¶ 31; Dkt. No. 33-4.

Plaintiff is white while Burton and James are African American. Dkt. No. 33 ¶¶ 37, 42. According to Plaintiff, Burton and James have previously claimed that Plaintiff does not "fit in" with them and they prefer to "stick to their own kind." Id. ¶ 32. Plaintiff believes that the above treatment she has received from Burton, James, and Defendant Tulino is because of her race. Id. ¶¶ 32–33. To support this belief, Plaintiff notes that Burton continues to be employed by USPS. Id. ¶ 33.

## II. Procedural Background

### A. Plaintiff's First EEO Complaint

Plaintiff initially contacted the USPS Equal Employment Opportunity ("EEO") office with complaints regarding Burton and James on July 11, 2022, dkt. no. 34-1 at 28, and later filed her first EEO complaint with USPS on October 26, 2022, id. at 7. The complaint described interactions between Plaintiff, Burton, and James in 2022, including:

4

(1)    Burton's emergency placement in June;

(2)    Plaintiff's resulting IMIP from the June incident;

(3)    Burton's reinstatement at James's direction in May;

(4)    Burton's threatening hand gestures towards Plaintiff in May;

(5)    Plaintiff's June meeting with a Post Office Manager of Operations and

(6)    Plaintiff's June emergency placement.

Id. at 10–11. The EEO office dismissed Plaintiff's complaint on February 13, 2023, due to Plaintiff's failure to submit requested affidavit responses. Id. at 2–4. In the dismissal, the EEO office informed Plaintiff of her right to file a civil action in an appropriate U.S. District Court within ninety days of the decision. Id. at 4.

### B. Plaintiff's Second EEO Complaint

Plaintiff filed a second EEO complaint with the USPS EEO office on February 1, 2024. Dkt. No. 33-1 at 1. The complaint alleged harassment based on several events in 2022, including the events described in the first EEO complaint, among others. Id. at 2–4. The complaint also described Burton's continued employment at the Alma Post Office as of the date of the complaint; an incident where Burton shouted at Plaintiff's vehicle while she waited at an ATM; and a January 2024 letter requiring Plaintiff to immediately report to the Alma Post Office as postmaster. Id. at 4.

5

The USPS EEO office dismissed Plaintiff's second complaint on March 7, 2024. Dkt. No. 33-2 at 5. In its dismissal, the EEO office found that the 2022 matters were not timely. Id. at 3. Additionally, the EEO office found that the remaining complaints, including the ATM incident and the letter ordering Plaintiff's return to the Alma Post Office, were "minor nuisance claims" and "neither sufficiently severe nor pervasive to create a discriminatory hostile or abusive working environment." Id. at 4. Finally, the notice informed Plaintiff of her right to file a civil action in an appropriate U.S. District Court within ninety days of the decision. Id.

### C. The Present Action

On June 4, 2024, Plaintiff filed suit in this Court against then-Postmaster Louis DeJoy.[3] Dkt. No. 1 at 5. Plaintiff amended her claim once as of right, and this Court granted her leave to amend her complaint a second time. Dkt. Nos. 15, 32. She presently seeks relief in the form of compensatory damages, retirement benefits, back pay, front pay, and attorneys' fees under 42 U.S.C. § 2000e-5(k). Dkt. No. 33 at 10-13. Defendant filed a motion to dismiss on March 19, 2025, arguing that Plaintiff has failed to

---

[3] Plaintiff's original complaint named Louis DeJoy as a defendant. Dkt. No. 33 at 1. Louis DeJoy has since resigned from USPS and has been replaced by Doug Tulino. See Postal Service Postmaster General/CEO Leadership Transition, USPS (March 24, 2025), https://about.usps.com/newsroom/national-releases/2025/0324-usps -pmg-ceo-leadership-transition.htm.

6

state a claim for which relief can be granted. Dkt. No. 34. Plaintiff filed a response in opposition to the motion to dismiss on April 2, 2025, dkt. no. 35, Defendant filed a reply on April 15, 2025, dkt. no. 37, and Plaintiff filed a sur reply on April 29, 2025, dkt. no. 39.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In deciding whether a complaint states a claim for relief, the Court must accept the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Ray

7

v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). The Court should not accept allegations as true if they merely recite the elements of the claim and declare that they are met; legal conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678-79.

A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Ultimately, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]'. . .'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While the factual allegations set forth in the complaint are to be considered true at the motion to dismiss stage, the same does not apply to legal conclusions set forth in the complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The Court need not "accept as true a legal conclusion couched as a factual

8

allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Lastly, exhibits attached to pleadings become part of a pleading. Fed. R. Civ. P. 10(c). Thus, the Court may consider exhibits attached to the complaint on a motion to dismiss. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000). Further, documents attached to a motion to dismiss can be considered by the Court without converting the motion into one for summary judgment if the attachment is "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." Horsley, 204 F.3d at 1134.

## DISCUSSION

**I. The claims raised in Plaintiff's First EEO Complaint[4] are time-barred.**

In his motion to dismiss, Defendant argues "[a]ll claims raised in [Plaintiff's] First EEO Claim are time-barred" for failure to exhaust administrative remedies.[5] Dkt. No. 34 at 8.

---

[4] Defendant's motion to dismiss attaches Plaintiff's first EEO complaint. Dkt. No. 34-1. The EEO complaint is central to Plaintiff's claims, and neither party has challenged the authenticity of the document. Horsley, 304 F.3d at 1134.

[5] Exhaustion of administrative remedies is a defense properly made in a motion to dismiss. See Basel v. Sec'y of Def., 507 F. App'x 873, 874-75 (11th Cir. 2013)

9

Indeed, under Title VII, Plaintiff must exhaust her administrative remedies before she brings a hostile work environment claim in federal court. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.105(a)(1), 1614.106(b), 1614.407.

Exhaustion of administrative remedies in this context has three requirements: a plaintiff must (1) contact an agency's EEO counselor within forty-five days of the alleged discrimination; (2) file a complaint with the agency within fifteen days of the notice of her right to do so; and (3) sue within ninety days of the agency's final decision or after 180 days have elapsed from the filing of her EEO complaint if no final action has been taken. 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.105(a)(1), 1614.106(b), 1614.407.

Here, Plaintiff filed her first EEO complaint with USPS on October 26, 2022. Dkt. No. 34-1 at 7. The EEO complaint described roughly the same 2022 interactions between Plaintiff, Burton, and James that form the basis of the current action. Compare id. at 10-11 with Dkt. No. 33 ¶¶ 10-27 (Plaintiff's second amended complaint). The EEO office dismissed Plaintiff's first complaint on February 13, 2023. Id. at 2-4. It is undisputed that Plaintiff did not file a civil suit in a U.S. District Court within ninety days of this final agency action. Rather, Plaintiff filed a second

EEO complaint[6] reiterating the 2022 incidents with the addition of events that occurred in 2023 and 2024, and she then filed this suit after the EEO office dismissed the second complaint. See supra at 4–6.

It would defeat the purpose of Title VII's statutory ninety-day filing window to allow a plaintiff to avoid that deadline by refiling the same allegations in a second EEO complaint. See, e.g., Dowdell v. Sunshine Biscuits, Inc., 90 F.R.D. 107, 116 (M.D. Ga. 1981) ("[A] Title VII plaintiff cannot be permitted to extend this period by repeatedly filing broad, duplicative charges with the EEOC and obtaining multiple right to sue letters."), aff'd, 673 F.2d 1343 (11th Cir. 1982); Spears v. Mo. Dep't of Corr. & Hum. Res., 210 F.3d 850, 853 (8th Cir. 2000) (barring a petitioner's retaliation claim based on charges filed in a previous EEOC action whose ninety-day filing window had lapsed); Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch., 465 F.3d 1184, 1186 (10th Cir. 2006) ("If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process.").[7] Plaintiff's present

---

[6] Plaintiff's second USPS EEO complaint, dkt. no. 33-1, is attached to the second amended complaint. Grossman, 225 F.3d at 1231 (noting the court may consider exhibits attached to a pleading at the motion to dismiss stage).

[7] These cases refer to the Equal Employment Opportunity Commission ("EEOC") and not a specific agency's EEO office because the cited cases cover alleged private, State, or local employment discrimination, governed by 42 U.S.C. § 2000e-5, rather than

11

action seeks to establish a hostile work environment claim premised on two categories of conduct: (1) the 2022 events raised in the first EEO complaint, and (2) the later events that were added to the 2022 events in the second EEO complaint. See supra at 4–6. But, because Plaintiff failed to file suit after she received her first right-to-sue notice, Title VII's time-bar prevents her from asserting any claims based solely on allegations in the first EEO complaint.

## II. The untimely acts raised in Plaintiff's second EEO complaint are not sufficiently related to the timely acts to form a claim for hostile work environment.

When a plaintiff brings a hostile work environment claim, evaluating the timeliness of the claim requires a thoughtful approach. As the Supreme Court has recognized, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002). Therefore, if one act related to a hostile work environment claim is timely filed, acts that may be otherwise barred by statutory timing requirements may be considered in the action if the acts

---

alleged federal employment discrimination which is governed my 42 U.S.C. § 2000e-16. See Dowdell, 90 F.R.D. at 109; Spears, 210 F.3d at 852; Brown, 465 F.3d at 1185. The ninety-day timing requirement for filing a civil case in U.S. District Court after final EEO or EEOC action are the same in both statutory sections, compare 42 U.S.C. § 2000e-16(c) with 42 U.S.C. § 2000e-5(f)(1). Therefore, the timing requirements discussed in cited cases are sufficiently analogous for the reasoning in those cases to be persuasive.

are sufficiently related to the timely hostile work environment claim. See Chambless v. Louisiana-Pac. Corp., 481 F.3d 1345, 1349–50 (11th Cir. 2007) ("Thus, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability if an act relating to the claim occurred within the filing period."); Morgan, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

In the hostile work environment context, untimely acts are sufficiently related when the timely acts demonstrate the same type of "'discriminatory intimidation, ridicule, and insult' that characterized the untimely allegations." Chambless, 481 F.3d at 1350 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). The Supreme Court has also found that acts are sufficiently related when the incidents involved "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Morgan, 536 U.S. at 120 (quoting, with approval, Morgan v. Nat'l R.R. Passenger Corp., 232 F.3d 1008, 1017 (9th Cir. 2000)).

Here, the timely acts raised in Plaintiff's second EEO filing include the incident between Burton and Plaintiff at an ATM, the January 2024 letter sent to Plaintiff directing her to return as postmaster, and the October 2024 letter proposing Plaintiff's

13

permanent removal due to her lack of attendance. Dkt. No. 33 ¶¶ 28-31.

In this case, the time-barred allegations concerning Plaintiff's 2022 confrontations with Burton and subsequent emergency placement contained in Plaintiff's first EEO complaint are not sufficiently related to the timely allegations to warrant consideration in the present suit. First, Plaintiff does not allege that the January and October 2024 letters were sent by the same managers named in the first EEO complaint. Moreover, the letters did not occur with any frequency because the only letter of which Plaintiff complained in the first EEO complaint was a single letter informing Plaintiff of her emergency placement in 2022. Dkt. No. 33 ¶ 26.

Second, the encounter between Plaintiff and Burton at an ATM is also not sufficiently related to the 2022 events. The only connection between that incident and the past events is the identity of the alleged perpetrator and the vague assertion that he remained "aggressive". See Dkt. No. 33 ¶ 28. This encounter allegedly occurred outside of work over a year after the events described in the first EEO complaint, see id.; dkt. no. 33-1 at 4, and the second amended complaint does not allege any details of this interaction, such as the content, motivation, or delivery, which might connect the incident to Plaintiff's 2022 interactions with Burton. Plaintiff was given two opportunities to amend her

complaint, yet the 2022 events remain insufficiently related to the timely acts alleged in the second EEO complaint. Accordingly, those acts may not be considered in Plaintiff's hostile work environment claim.

### III. The timely acts raised in Plaintiff's second amended complaint do not state an actionable hostile work environment claim.

In his motion to dismiss, Defendant argues that the timely acts of which Plaintiff complains are "singular, discrete events" which "do not even approach a hostile work environment claim." Dkt. No. 34 at 11, 15.

A prima facie case of hostile work environment requires that Plaintiff establish three things: "that [she] suffered unwelcome harassment, that it was based on a protected characteristic, and that it was sufficiently 'severe or pervasive' to alter the terms and conditions of [her] employment and create an abusive working environment." Harris v. Pub. Health Tr. of Miami-Dade Cnty., 82 F.4th 1296, 1302 (11th Cir. 2023) (quoting Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). "The 'severe or pervasive' requirement entails both an objective component—namely, that a reasonable person would find the environment hostile or abusive—and a subjective component." Id. In assessing the objective component, the court evaluates "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

15

a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Morgan, 536 U.S. at 116. Sporadic and isolated incidents are not sufficient to alter the terms and conditions of a plaintiff's employment. See McCann v. Tillman, 526 F.3d 1370, 1379 (11th Cir. 2008).

The timely events alleged in Plaintiff's second amended complaint fall far short of the threshold to establish a hostile work environment claim. With respect to the January and October 2024 letters, Plaintiff argues that threats of termination can be considered adverse employment actions depending on the circumstances of the threat. Dkt. No. 35 at 17. But "more" is required to transform such threats into adverse employment actions. See Williams-Evans v. Advance Auto Parts, 843 F. App'x 144, 149 (11th Cir. 2021) ("[A] threat of termination, without more, is not a 'materially adverse' employment action."). Plaintiff alleges that the January and October 2024 "threatening" letters were a "continuation of a pattern of discrimination." Dkt. No. 33 ¶¶ 30-31. But Plaintiff does not allege any specific basis for arguing that the letters were based on a protected characteristic. Moreover, the sending of the letters is not the kind of "severe or pervasive" conduct that constitutes a hostile work environment claim. The letters were infrequent, occurred at least nine months apart, and did not interfere with Plaintiff's work performance. Dkt. No. 33 ¶¶ 30-31. Indeed, the first letter

16

instructed Plaintiff to return to work, encouraging work performance. Dkt. No. 33 ¶¶ 30-31.

The ATM incident with Burton likewise does not comprise a claim for hostile work environment under Title VII. Nothing in any of the versions of the complaint indicates that it occurred on work premises, nor are there allegations that it involved any on-duty employees. Dkt. No. 33 ¶ 28; Dkt. No. 33-1 at 4. And Plaintiff does not allege that the encounter occurred due to her race, other than a blanket allegation that Burton and James had previously stated that Plaintiff does not "fit in" with them and that they prefer to "stick to their own kind." Id. ¶ 32. Even if Plaintiff had pled sufficient facts to infer that the confrontation at the ATM was racially motivated, this would still be the kind of "sporadic and isolated" conduct that cannot form the basis of a hostile work environment claim. Cf. McCann, 526 F.3d at 1378-79 (finding two incidents of alleged racially derogatory comments too "sporadic and isolated" to constitute a hostile work environment claim). As a result, Plaintiff's second amended complaint does not meet the requirements to survive the motion to dismiss stage.

## CONCLUSION

Accepting the facts in the second amended complaint as true, the Court concludes that Plaintiff has not adequately pled a hostile work environment claim against Defendant Tulino.

17

Accordingly, Defendant's motion to dismiss, dkt. no. 34, is **GRANTED**.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 30th day of September, 2025.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA